**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROBERT A. SHANK**<br>**3805 Pascal Avenue**<br>**Baltimore Maryland 21226-1145** | *<br><br>* | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. _____** |
| **BALTIMORE CITY BOARD OF**<br>**SCHOOL COMMISSIONERS,** | *<br><br>* | |
| **Serve on:** | * | |
| **Andres Alonzo, Ph. D.**<br>**CEO**<br>**Baltimore City Public Schools**<br>**200 East North Avenue**<br>**Baltimore, Maryland 21202** | *<br><br>*<br><br>* | |
| **and** | * | |
| **KEVIN SEAWRIGHT,**<br>**Deputy Chief Operating Officer**<br>**Baltimore City Public Schools**<br>**200 East North Avenue**<br>**Baltimore, Maryland 21202,** | *<br><br>*<br><br>* | |
| **and** | * | |
| **JEROME JONES,**<br>**Manager of Labor Relations**<br>**Baltimore City Public Schools**<br>**200 East North Avenue**<br>**Baltimore, Maryland 21201** | *<br><br>*<br><br>* | |
| **and** | * | |
| **JERRY WATKINS,**<br>**Facilities Maintenance and**<br>**Inspections Director**<br>**Baltimore City Public Schools**<br>**2200 Robb Street**<br>**Baltimore, Maryland 21218** | *<br><br>*<br><br>* | |

and                                    *

**WILLIAM WATKINS,**                   *
**Area Facilities Manager**
**Baltimore City Public Schools**      *
**2200 Robb Street**
**Baltimore, Maryland 21218**          *

                    **Defendants.**    *

*       *       *       *       *       *       *       *       *       *       *       *       *

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Robert A. Shank, by and through the undersigned attorney, hereby sues the

government agency Defendant, Baltimore City Board of School Commissioners (hereinafter

referred to as "Board"), and the individual Defendants, Kevin Seawright, Jerome Jones, Jerry

Watkins, and Williams Watkins.  Proceeding against him discriminatorily because he is White,

and doing so arbitrarily and capriciously, without due proof and in the absence of due process,

Defendant Board determined that Plaintiff had failed to perform his assigned duties as an

Education Building Supervisor for the Baltimore City Public School System and unlawfully

terminated his employment.   Proceeding on its racially discriminatory course of action,

Defendant Board was assisted by the actions of individual Defendants Seawright, Jerry Watkins,

and William Watkins, and in proceeding to terminate Plaintiff's employment in violation of due

process, Defendant Board was assisted by the actions of Defendants Seawright, Jones, Jerry

Watkins, and William Watkins.  As a result, corporate Defendant Board and the individual

Defendants, Seawright, Jones, Jerry Watkins and William Watkins thereby wrongfully deprived

Plaintiff of the income arising from such employment, as well as imposed upon him such pain,

suffering, embarrassment and humiliation as is ordinarily associated with such loss of

employment.

In so doing, the Defendant Board discriminated against Plaintiff because he is White, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq*., as well as in violation of the Civil Rights Act of 1867, 42 U.S.C. § 1981, and, as a person acting under color of State law, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Furthermore, individual Defendants Seawright, Jerry Watkins and William Watkins discriminated against Plaintiff because of his race, to deny him equal protection of the laws, acting under color of State law, in violation of 42 U.S.C. § 1983. Defendant Board, acting with individual Defendants Seawright, Jones, Jerry Watkins, and William Watkins, have acted under color of State law to deny Plaintiff due process, in violation of 42 U.S.C. § 1983. In support of this action, which he prays in relevant part be tried before a jury, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1343, in that this action, in part, arises under the Constitution of the United States and the laws of the United States and asserts a violation of civil rights secured by the United States Constitution and by federal law.

2. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b) because the Plaintiff's causes of action arose within the District of Maryland. In addition, there is no other district within which this action may be brought, and the defendants reside in the State of Maryland.

3

## THE PARTIES

3.  Plaintiff Shank is a White male who, at the time of the events recounted herein, was an employee of the Baltimore City Public School System.  He resides in the State of Maryland in Baltimore City.

4.  Defendant Board is an authority created under the laws of the State of Maryland for the purpose of administering, managing, and operating the public schools in Baltimore City.  The headquarters for the Defendant Board are located at 200 East North Avenue in Baltimore City.  Defendant Board openly solicits employment from members of the public.  Defendant Board operates under the State provision that created it as an entity independent of the State of Maryland, and, as such, it is not an agency of the State of Maryland.  The Defendant Board was established to replace the administration of schools in Baltimore City, which schools previously had been administered directly by the Mayor and City Council of Baltimore.  For many of its essential functions, the Defendant Board remains still dependent upon the City of Baltimore.   In its capacity as a creation of State law to administer the public schools in a political subdivision of the State, Baltimore City, Defendant Board is a person for purposes of applying 42 U.S.C. § 1983.

5.  Defendant Kevin Seawright, an African American male, holds the position of Deputy Chief Operating Officer with Defendant Board.  His office is located at the Defendant Board's headquarters building in Baltimore City.  For purposes of the allegations of this Complaint, he has proceeded as a person acting under color of State law within the meaning of 42 U.S.C. § 1983.  This action is brought against Defendant Seawright only in his individual capacity.

6.  Defendant Jerome Jones, an African American male, holds the position of Manager of Labor Relations with Defendant Board.  His office is located at the Defendant Board's

4

headquarters building in Baltimore City.  For purposes of the allegations of this Complaint, he

has proceeded as a person acting under color of State law within the meaning of 42 U.S.C. §

1983.  This action is brought against Defendant Jones only in his individual capacity.

7.  Defendant Jerry Watkins, an African American male, holds the position of Facilities

Maintenance and Inspections Director with Defendant Board.  His office is located at the

Defendant Board's facilities headquarters building located at 2200 Robb Street in Baltimore

City.  For purposes of the allegations of this Complaint, he has proceeded as a person acting

under color of State law within the meaning of 42 U.S.C. § 1983.  This action is brought against

Defendant Jerry Watkins only in his individual capacity.

8.  Defendant William Watkins, an African American male, holds the position of Area

Facilities Manager with Defendant Board.  His office is located at the Defendant Board's

facilities headquarters building located at 2200 Robb Street  in Baltimore City.  Defendant

William Watkins is in no way related personally to Defendant Jerry Watkins.  For purposes of

the allegations of this Complaint, he has proceeded as a person acting under color of State law

within the meaning of 42 U.S.C. § 1983.  This action is brought against Defendant William

Watkins only in his individual capacity.

## BACKGROUND FACTS

9.  From July 24, 2006 through March 16, 2009, Plaintiff was engaged by Defendant

Board to work as an Education Building Supervisor ("EBS").  In this capacity, Plaintiff was

assigned to supervise the maintenance and upkeep of school facilities in an assigned area.  The

position for which Defendant Board hired Plaintiff was responsible for the school district's

Southern District/Region II, containing the following schools: Curtis Bay Elementary-Middle

School, Bay Brook Elementary-Middle School, Masonville Cove High School, Maree G. Farring

Elementary-Middle School, Dr. Carter G. Woodson Elementary-Middle School, Arundel

Elementary-Middle School, Cherry Hill Elementary-Middle School, Westport Academy

Elementary-Middle School, South Side Academy High School, New Area Academy High

School, and Patapsco Elementary-Middle School.

10.  Prior to his engagement by the Defendant Board, Plaintiff had extensive private

sector experience in the field of facilities supervision, including work in the following positions.

From October 2003 until March 2004, Plaintiff worked as Plant Manager for A & A

Environmental Services.  In this capacity, among other things, Plaintiff purchased and

inventoried all materials used in the daily operations for plant processing and equipment usage,

sampled and tested waste materials for off-loading or solidifying usage, managed and

coordinated shipping and receiving of hazardous and non-hazardous materials for disposal, and

managed the inventory of waste materials, plant materials and the shipping of all materials.

From August 1988 through April 2003, Plaintiff worked as Plant Manager for Central Oil

Asphalt Corporation.  In this capacity, Plaintiff reported directly to the corporation's CEO,

managing all aspects of a 3-acre liquid asphalt manufacturing plant producing annual revenues of

$4-6 million.  Plaintiff started his career as a Material Handler-Maintenance Technician with

Central Oil Asphalt Corporation in June 1979, rising through the ranks to become Plant

Superintendent in November 1983, before rising to assume his duties as Plant Manager.  As

Plant Manager overseeing all operations of two different manufacturing facilities, Plaintiff's

prior private sector experience more than adequately prepared him for maintaining, repairing or

contracting, if needed, for facilities, buildings, manufacturing equipment, electrical work, boiler

room maintenance, and grounds care and maintenance.  He was experienced at answering to the

federal Environmental Protection Agency, Maryland Department of the Environment, and

Maryland Occupational Safety and Health Administration for regulatory laws.  His private sector experience prior to taking his position with Defendant Board grounded Plaintiff in employee hiring, firing, disciplining, scheduling and training, record keeping for regulatory laws, building inspections/repairs, preventive maintenance, and for securing, and operating within, oil and water permits.

      11.   Throughout his career, Plaintiff had successfully performed his responsibilities.  His position with Central Oil Asphalt Corporation ended when that business ceased its operation in Maryland, and Plaintiff left his position with A & A Environmental Services in March 2004, when, following an injury on the job, Plaintiff was no longer able to fulfill his work duties.  At no time prior to his engagement by Defendant Board had Plaintiff ever been discharged by an employer for failure to perform his duties.  In all his prior work assignments, Plaintiff performed in a manner that showed him to be a self-motivated and goal oriented individual driven to secure the best outcome for his employer.

      12.   In pursuing the EBS position for which he was hired by Defendant Board in 2006, Plaintiff was interviewed by Thomas Palardy, then Facilities Director for Defendant Board. Plaintiff stated during the interview that he would be perfect for the position due to his private sector background in facilities and the fact that he lived in the southern district where Mr. Palardy had explained the school system wanted to try having an EBS work out of a school instead of report to the facilities headquarters at 2200 Robb Street.   After the discussion and the acknowledgement that Plaintiff had medical restrictions, Mr. Palardy nonetheless extended an offer of employment to Plaintiff for the EBS position on or about July 24, 2006, and the Plaintiff accepted the offer.  Mr. Palardy, a White male, shortly thereafter left his position as Facilities Director to be replaced by Defendant Jerry Watkins

13.  From the start, Plaintiff performed his duties for Defendant Board at the same high level he had known in his private sector positions.  During his first months on the job, Plaintiff's performance was distinguished by the following accomplishments.

- Succeeding in elevating all six of Plaintiff's assigned schools in their cleaning scores to a passing grade or above, with the result that management thereafter assigned Plaintiff two additional schools, whose cleaning scores he then managed to raise within just two months to exceed system expectations.

- Working with the school principals to eliminate negative verbal and E-mail complaints to upper management, resulting in his receiving at a cross-department staff meeting special recognition by school system Chief Operating Officer Keith Scoggins for outstanding performance in eliminating negative phone calls and e-mails from one specific school.

- Working and interacting with, and training, custodians to improve morale and minimizing problems, increasing overall productivity in cleaning, maintenance and upkeep of the buildings in his assigned area.

14.  In or about December 2006, at a meeting that included Plaintiff's fellow Education Facilities Supervisors and other facilities personnel for the Defendant Board, Mr. Scoggins singled out Plaintiff for commendation for exceptional performance in handling the maintenance of his assigned school.  As a result, Plaintiff was given a standing ovation by some of the staff present, but not all of them, particularly Defendants Jerry Watkins and William Watkins.  At this same meeting, Mr. Scoggins also told the EBS personnel and the Area Facilities Managers of all three regions, "If Shank can do it so can the rest of you, and, if you don't, I'll write up everyone, including the Area Facilities Managers."

15.  Of the individuals present at the staff meeting in which Plaintiff was singled out for commendation, Plaintiff was the only individual so recognized.  Few of the other EBS personnel or Area Facilities Managers present at this meeting, other than Plaintiff, were White.

16.  Since the time of the recognition by Mr. Scoggins, described above in Paragraph 14,

Plaintiff's relationship with his immediate manager, Defendant William Watkins, and with the official to whom his immediate manager reported, Defendant Jerry Watkins, changed immediately for the worse.

17.   After the incident in which Mr. Scroggins recognized Plaintiff's accomplishment, Defendants William Watkins, Jerry Watkins and Seawright proceeded to undermine Plaintiff's performance in the following ways;

- Unlike other supervisors, Plaintiff was not allowed to write up or discipline certain custodians plainly not performing their duties or in clear violation of workplace rules.

- Unlike other supervisors, Plaintiff was not afforded coverage when off duty, and he was required to work overtime, even though his requests for overtime pay were consistently refused.

- Defendant William Watkins instructed Plaintiff improperly to forge a custodian's name on certain paper work.

- Defendant William Watkins harassed Plaintiff for a week to sign his name on an overtime authorization for custodians at Dr. Cater G. Woodson which overtime requests Defendant William Watkins would have allowed and which overtime requests Plaintiff could not properly certify.

- Plaintiff was told to report uptown by Defendant William Watkins for meetings that never occurred.

- Management ignored requests from Plaintiff for help supplying him with needed office equipment and supplies.

- Defendant William Watkins promised to reimburse Plaintiff for monies personally expended by Plaintiff for vehicle, supplies and equipment that management subsequently refused to reimburse.

- Management singled out Plaintiff as the only EBS to manage with decreased part-time custodian employees' hours approved by management for staff assigned to Plaintiff's area.

- Defendant William Watkins informed Plaintiff that Defendants Seawright and Jerry Watkins were very upset with him for going over their heads regarding workplace issues to Benny E. Williams, Chief of Staff for the Defendant Board.

- Management gave Plaintiff two write-ups for violations that he never committed, that therefore were not valid and were never proved valid.

18.  From December 2006, through February 2009, Defendants Seawright, William Watkins, and Jerry Watkins, created and falsified an escalating series of disciplinary actions against Plaintiff and false and unfavorable performance assessments.  These Defendants made false statements regarding Plaintiff's job performance, calculated during the latter part of 2008 and early 2009 to undermine Plaintiff's job security in order to justify, under false pretenses, a termination of Plaintiff's employment.  By February 2009, Plaintiff then told Defendant William Watkins that Plaintiff was tired of the harassment to get him to sign false documents and the false assertions of poor job performance, and that Plaintiff was going to the union.  On February 6, 2009 Plaintiff went to the union.  Three days later, on February 9, 2009, Defendant William Watkins terminated Plaintiff's employment for cause.  The cause he alleged was ratified by the Defendant Board in the form of a letter dated March 16, 2009, from JoAnne Kohler, the Chief Human Resources Officer for the Defendant Board.   According to that letter, termination of Plaintiff's employment was grounded upon the following cause:

> You have been charged with willful neglect of duty in the performance of your job responsibilities and insubordination toward your immediate supervisor and other Facilities Managers.

19.  Plaintiff challenged the termination directed by Defendant William Watkins, and, on or about February 19, 2009, the Defendant Board afforded Plaintiff a hearing on the termination.  The hearing in question was presided over by Defendant Jones.  The evidence offered at this hearing by Defendants William Watkins and Jerry Watkins was false and such documentation provided at this hearing was falsified.  There was no valid or otherwise credible evidence supporting the allegations of Defendants Jerry Watkins, William Watkins, and other management personnel of Defendant Board.

20.  The determination of Defendants Jerry Watkins and William Watkins to terminate Plaintiff's employment was not based upon a genuine belief that Plaintiff was unable or otherwise unwilling to perform his job.  Rather, these Defendants were driven to this conclusion by *racial animus* against Plaintiff because he was a White man who had been recognized for exceptional performance on the job by Mr. Scroggins.  During the aftermath of the action to terminate Plaintiff, Defendant Jerry Watkins was sufficiently upset by Plaintiff's exceptionally good performance on the job and by his receiving recognition for such performance, that Defendant Jerry Watkins took action against Defendant William Watkins to demote him, explaining to Defendant William Watkins that the action was taken *"because he let that stupid White boy [referring to Plaintiff] kick his ass."*  The termination in question was not the result of deficient performance but rather *racial jealousy* arising from a combination of circumstances, including exceptional performance by Plaintiff, the recognition of that performance by COO Scroggins, and Plaintiff's race.

## CAUSES OF ACTION

### COUNT I
### Race Discrimination in Violation of Title VII
### (Against Defendant Board Only)

21.  Plaintiff Shank realleges the assertions made in Paragraphs Nos. 1 through 20 as if these paragraphs had been fully set forth herein.

22.  Within a timely period in 2009, Plaintiff Shank filed with the Maryland Commission on Human Relations (hereinafter "MCHR") a charge of employment discrimination on account of race, in accordance with the procedural requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

23.  In his submitted charge of discrimination or through subsequent communications with the MCHR, Plaintiff Shank complained about issues of race discrimination in his treatment and termination by the Baltimore City Public Schools.

24.  Following the MCHR investigation of Plaintiff's charge of employment discrimination, the United Stated Equal Employment Opportunity Commission (hereinafter "EEOC")  issued to Plaintiff formal notice of his right to bring suit for race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.  That Notice was issued by the EEOC on or about January 26, 2011.   The notice was not received by the Plaintiff until several days thereafter.  Within the time permitted by statute, Plaintiff has timely commenced this litigation.

25.  Defendant Board has acted unlawfully against Plaintiff, in violation of Title VII, in the following manner:

a.  Through the actions of its management personnel, including Defendants Seawright, Jerry Watkins, and Williams Watkins, Defendant Board subjected Plaintiff to differential treatment on account of his race, resulting ultimately in the termination of his employment, and thereby afforded him on that account an impaired and unfair opportunity for continued employment with Defendant Board;

b.  Through the actions of Defendants Seawright, Jerry Watkins, and William Watkins, among others, Defendant Board subjected Plaintiff to differential treatment in terms of the support afforded him as a manager, its false and erroneous assessment of his performance, and in its wrongful disciplining of him for actions or omissions for which he was not culpable;

c.  Through the actions of Defendants Seawright, Jerry Watkins and William Watkins, among others, Defendant Board discriminated against Plaintiff by subjecting him to

work conditions calculated to cause him difficulty on the job and to create stress for Plaintiff in the performance of his duties.

26. The actions undertaken against Plaintiff Shank, as referred to in Paragraph No. 25 above, were undertaken because of racial jealousy by African American managers of Defendant Board, irritated that Plaintiff, a White man, had received high commendation and praise from the system's African American COO and had been offered to the predominantly African American facilities management staff by the COO as a model of exceptional performance. As a result, Plaintiff avers, on information and belief, that Defendants Seawright, Jerry Watkins, and William Watkins determined to show up the "stupid White boy," effecting, on false pretenses, the termination of Plaintiff's employment with Defendant Board.

27. In so proceeding on behalf of the Defendant Board, managers Defendants Seawright, Jerry Watkins, and William Watkins, acted with malice deliberately to injure the federally protected interests of Plaintiff. The action of the Defendant Board to terminate the Plaintiff's employment was necessarily grounded upon the malice herein attributed to the identified managers.

28. As a direct and proximate result of the Defendant Board's wrongful acts, Plaintiff Shank has suffered, and will continue to suffer, actual damages, humiliation, embarrassment, as well as pain and suffering, from actions undertaken by Defendants to discriminate against him for reasons of his race.

29. As a former employee of Defendant Board so terminated as a result of race discrimination, Plaintiff Shank has no adequate or complete remedy at law. He is now suffering, and will continue to suffer, irreparable injury at least because of such clouds still remaining over his reputation as a result of the actions undertaken by the Defendant Board.

WHEREFORE, Plaintiff Shank demands judgment against the Defendant Board for compensatory damages of Three Hundred Thousand Dollars ($300,000.00), in addition to punitive damages of One Million Dollars ($1,000,000.00), plus legal fees, costs, expenses of suit, and any other relief, including, but not limited to, injunctive relief to afford Plaintiff the opportunity to restore his reputation and reclaim his former position, in addition to such other relief that the Court or a jury deems proper.

## COUNT II
### Civil Rights Act of 1867, 42 U.S.C. § 1981
### (Against Defendant Board Only)

30.  Plaintiff Shank realleges the assertions made in Paragraphs Nos. 1 through 20 as if these paragraphs had been fully set forth herein.

31.  From July 24, 2006 through March 16, 2009, Plaintiff performed the duties of his position under a contract entered into with the Defendant Board.

32.  Under his contract with the Defendant Board, Plaintiff enjoyed a reasonable expectation of continued employment absent such cause as was fairly and duly determined.

33.  Plaintiff Shank performed his duties in a manner that exceeded contract expectations for his position.

34.  Notwithstanding such performance conforming to the expectations of his contract with Defendant Board, the Defendant Board nonetheless terminated his employment.

35.  In so performing his contract duties, Plaintiff Shank was entitled by federal law to expect such performance and enforcement of this contract by the Defendant Board to be free of race discrimination.

36.  Defendant Board discriminated against Plaintiff because of his race in its enforcement and performance of its contract with Plaintiff Shank in the following manner:

14

a.  Through the actions of its management personnel, including Defendants Seawright, Jerry Watkins, and Williams Watkins, Defendant Board subjected Plaintiff to differential treatment on account of his race, resulting ultimately in the termination of his employment, and thereby afforded him on that account an impaired and unfair opportunity for continued employment with Defendant Board;

b.  Through the actions of Defendants Seawright, Jerry Watkins, and William Watkins, among others, Defendant Board subjected Plaintiff to differential treatment in terms of the support afforded him as a manager, its false and erroneous assessment of his performance, and in its wrongful disciplining of him for actions or omissions for which he was not culpable;

c.  Through the actions of Defendants Seawright, Jerry Watkins and William Watkins, among others, Defendant Board discriminated against Plaintiff by subjecting him to work conditions calculated to cause him difficulty on the job and to create stress for Plaintiff in the performance of his duties.

37.  The actions undertaken against Plaintiff Shank, as referred to in Paragraph No. 36 above, were undertaken because of racial jealousy by African American managers of Defendant Board, irritated that Plaintiff, a White man, had received high commendation and praise from the system's African American COO and had been offered to the predominantly African American facilities management staff by the COO as a model of exceptional performance.  As a result, Plaintiff avers, on information and belief, that Defendants Seawright, Jerry Watkins, and William Watkins determined to show up the "stupid White boy," effecting, on false pretenses, the termination of Plaintiff's employment with Defendant Board.

38.  In so proceeding on behalf of the Defendant Board, its managers, Defendants Seawright, Jerry Watkins, and William Watkins, acted with malice deliberately to injure the

federally protected interests of Plaintiff.  The action of the Defendant Board to terminate the Plaintiff's employment was necessarily grounded upon the malice herein attributed to the identified managers.

39.  As a direct and proximate result of the Defendant Board's wrongful acts, Plaintiff Shank has suffered, and will continue to suffer, actual damages, humiliation, embarrassment, as well as pain and suffering, from actions undertaken by Defendants to discriminate against him for reasons of his race.

40.  As a former employee of Defendant Board so terminated as a result of race discrimination, Plaintiff Shank has no adequate or complete remedy at law.  He is now suffering, and will continue to suffer, irreparable injury at least because of such clouds still remaining over his reputation as a result of the actions undertaken by Defendants the Board.

WHEREFORE, Plaintiff Shank demands judgment against Defendants Board for compensatory damages of Three Hundred Thousand Dollars ($300,000.00), in addition to punitive damages of One Million Dollars ($1,000,000.00), plus legal fees, costs, expenses of suit, and any other relief, including, but not limited to, injunctive relief to afford Plaintiff the opportunity to restore his reputation and reclaim his former position, in addition to such other relief that the Court or a jury deems proper.

**COUNT III**
**Race Discrimination by Individuals Acting Under Color of State Law**
**In Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983**
**(As Against Defendant Board and Individual Defendants Seawright, Jerry Watkins, and William Watkins)**

41. Plaintiff Shank realleges the assertions made in Paragraphs Nos. 1 through 20 as if these paragraphs had been fully set forth herein.

42. Defendants Board, Seawright, Jerry Watkins, and William Watkins have violated the Civil Rights Act of 1871, 42 U.S.C. § 1983, as persons acting under color of State law to deny Plaintiff Shank equal protection of laws on account of his race. Specifically, these Defendants have undertaken the following actions:

a. Through the actions of its management personnel, including Defendants Seawright, Jerry Watkins, and Williams Watkins, Defendant Board, together with these identified individual Defendants, subjected Plaintiff to differential treatment on account of his race, resulting ultimately in the termination of his employment, and thereby afforded him on that account an impaired and unfair opportunity for continued employment with Defendant Board;

b. Through the actions of Defendants Seawright, Jerry Watkins, and William Watkins, among others, Defendant Board, together with these identified individual Defendants, subjected Plaintiff to differential treatment in terms of the support afforded him as a manager, their false and erroneous assessment of his performance, and in their wrongful disciplining of him for actions or omissions for which he was not culpable;

c. Through the actions of Defendants Seawright, Jerry Watkins and William Watkins, among others, Defendant Board, together with these identified individual Defendants, discriminated against Plaintiff by subjecting him to work conditions calculated to cause him difficulty on the job and to create stress for Plaintiff in the performance of his duties.

17

43.  In undertaking the actions set forth above in Paragraph No. 42 above, Defendants Board, Seawright, Jerry Watkins, and William Watkins have denied Plaintiff Shank such treatment that Defendant Board is legally committed to make available to all its employees irrespective of race, thereby depriving Plaintiff of the equal protection of the laws assured him by the Fourteenth Amendment to the United States Constitution.  In all respects pertinent to this Complaint, Defendants Board, Seawright, Jerry Watkins, and William Watkins are persons within the meaning of 42 U.S.C. § 1983, who have acted under color of State law.

44.  The discriminatory practices herein described and attributed to Defendants Board, Seawright, Jerry Watkins, and William Watkins were intentional, willful, and malicious. Furthermore, the actions undertaken by these Defendants were therefore performed without justification, excuse, or any belief that they were otherwise allowed by law.

45.  As a direct and proximate result of the wrongful acts of these identified Defendants, Plaintiff Shank has suffered, and will continue to suffer, actual damages, humiliation, embarrassment, as well as pain and suffering, from actions undertaken by these identified Defendants to discriminate against him for reasons of his race.

46.  As a former employee of Defendant Board so terminated as a result of race discrimination, Plaintiff Shank has no adequate or complete remedy at law.  He is now suffering, and will continue to suffer, irreparable injury at least because of such clouds still remaining over his reputation as a result of the actions undertaken by these identified Defendants.

WHEREFORE, Plaintiff Shank demands judgment against Defendants Board, Seawright, Jerry Watkins, and William Watkins for compensatory damages of Three Hundred Thousand Dollars ($300,000.00), in addition to punitive damages of One Million Dollars ($1,000,000.00), plus legal fees, costs, expenses of suit, and any other relief, including, but not limited to,

injunctive relief to afford Plaintiff the opportunity to restore his reputation and reclaim his former position, in addition to such other relief that the Court or a jury deems proper.

**COUNT IV**
**Denial of Due Process**
**42 U.S.C. § 1983**
**(As Against All Defendants)**

47.  Plaintiff Shank realleges the assertions made in Paragraphs Nos. 1 through 20 as if these paragraphs had been fully set forth herein.

48.  Defendants Board, Seawright, Jones, Jerry Watkins, and William Watkins have violated the Civil Rights Act of 1871, 42 U.S.C. § 1983, as persons acting under color of State law to deny Plaintiff Shank the due process of law assured him by the Fourteenth Amendment to the United States Constitution with respect to the decision in which these Defendants jointly brought about to terminate the employment of Plaintiff Shank.  Specifically, these Defendants have undertaken the following actions:

a.  Through the actions of its management personnel, including Defendants Seawright, Jerry Watkins, and Williams Watkins, Defendant Board, acting in concert with individual Defendants Seawright, Jerry Watkins, William Watkins, terminated Plaintiff's employment in the absence of credible evidence and upon evidence that these individual Defendants falsified and/or deliberately distorted; and

b.  Through his control and manipulation of the review process, Defendant Jones knowingly ratified a decision based upon questionable and falsified evidence, such as to deny Plaintiff a fair opportunity to be heard.

50.  In undertaking the above identified actions, Defendants Board, Seawright, Jones, Jerry Watkins, and William Watkins acted as persons within the meaning of 42 U.S.C. § 1983, proceeding under color of State law.

51.  The acts herein described and attributed to Defendants Board, Seawright, Jones, Jerry Watkins and William Watkins were intentional, willful, and malicious.  Furthermore, the actions undertaken by these Defendants were therefore performed without justification, excuse, or any belief that they were otherwise allowed by law.

52.  As a direct and proximate result of these Defendants' wrongful acts, Plaintiff has suffered, and will continue to suffer, actual damages, humiliation, embarrassment, as well as pain and suffering.

53.  As a former employee of Defendant Board so denied due process, Plaintiff Shank has no adequate or complete remedy at law.  He is now suffering, and will continue to suffer, irreparable injury at least because of such clouds still remaining over his reputation as a result of the actions undertaken by Defendants Board, Seawright, Jones, Jerry Watkins and William Watkins.

WHEREFORE, Plaintiff Shank demands judgment against Defendants Board, Seawright, Jones, Jerry Watkins and William Watkins for compensatory damages of Three Hundred Thousand Dollars ($300,000.00), in addition to punitive damages of One Million Dollars ($1,000,000.00), plus legal fees, costs, expenses of suit, and any other relief, including, but not limited to, injunctive relief to afford Plaintiff the opportunity to reclaim his former position with

Defendant Board and restore his professional reputation, in addition to such other relief that the

Court or a jury deems proper.

Respectfully submitted,


/s/
John H. Morris, Jr.
Trial Bar No. 00325
1210 East 33rd Street
Baltimore, Maryland 21218
(410) 366-5683

Attorney for Plaintiff Shank


## REQUEST FOR JURY TRIAL

Plaintiff Robert A. Shank, by and through the undersigned attorney, hereby requests trial

by jury with respect to such portions of his claim as to which he is entitled a jury trial.


/s/
John H. Morris, Jr.