IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT A. SHANK                    *
                                   *
v.                                 *
                                   *   Civil Action No. WMN-11-1067
BALTIMORE CITY BOARD OF            *
SCHOOL COMMISSIONERS et al.        *
                                   *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 27. Upon review of the filings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Robert Shank filed this action on April 25, 2011, against his former employer, the Baltimore City Board of School Commissioners (the Board) alleging that he was discriminated against and terminated from employment on the basis of his race (white). He also named as defendants several employees of the Board (Jerome Jones, Jerry Watkins, and William Watkins) and one former employee of the Board (Kevin Seawright). As previously noted by this Court, ECF No. 17 at 5, the Complaint presented highly detailed allegations concerning the events that led to his termination.

Plaintiff was hired as an Education Building Supervisor (EBS) on or about July 24, 2006, by the Board's Facilities Director, Thomas Palardy, a white male.  Plaintiff came to this position with extensive private sector experience in facilities maintenance.  As an EBS, Plaintiff was initially responsible for the maintenance of eleven schools in the Board's Southern District.  Because of the location of Plaintiff's residence and certain medical restrictions, Palardy permitted Plaintiff to work out of one of his assigned schools instead of the school system's office for facilities management, where most EBSs were based.  Shortly after Plaintiff was hired, Palardy was replaced by Defendant Jerry Watkins.

Plaintiff was initially highly successful in his new position.  He was so successful, in fact, that at a December 2006 meeting of other EBSs and other facilities staff, including Plaintiff's supervisors, Plaintiff was singled out by the Board's Chief Operating Officer Keith Scroggins for his exceptional performance in handling the maintenance of one of his assigned schools.  Plaintiff received a standing ovation at this meeting, and Scroggins challenged those present, "If Shank can do it so can the rest of you, and, if you don't, I'll write

up everyone, including the Area Facilities Managers."  ECF No. 36-1, Pl.'s Decl. at ¶ 7.[1]

While employed as an EBS, Plaintiff's immediate supervisor was Defendant William Watkins, one of the school system's Area Facilities Managers.  William Watkins reported to Defendant Jerry Watkins (no relation).  At all times relevant to this action, Defendant Kevin Seawright was a Deputy Chief Operating Officer for Defendant Board.  William Watkins, Jerry Watkins, and Kevin Seawright are all African American.

Plaintiff states that, after being singled out by Scroggins for commendation, Defendants William Watkins, Jerry Watkins, and Seawright proceeded to undermine Plaintiff's performance in numerous ways.  For example, Plaintiff states he was required to work overtime without pay, he was restricted in his ability to discipline those working under him, his requests for supplies and personnel were ignored, and he was written up for violations that he never committed.  These falsified disciplinary actions against Plaintiff continued to escalate through the beginning of 2009.  On February 6, 2009, Plaintiff went to his union to complain about the treatment he was receiving.  On February 9,

---

[1] Plaintiff included many of these same allegations in his Complaint.  Because we are now at the summary judgment stage, however, the Court will cite to Plaintiff's Declaration instead of the Complaint.

2009, William Watkins informed Plaintiff that he was being terminated for cause.

Plaintiff challenged that termination and, on February 19, 2009, the Board afforded Plaintiff a hearing that was presided over by Defendant Jerome Jones, the Board's Manager of Labor Relations.  Plaintiff asserts that Defendants William Watkins and Jerry Watkins presented false documentation at this hearing in support of the decision to terminate his employment.  The termination was upheld.

Based on these allegations, Plaintiff filed a Complaint containing the following four counts: Count I – a race discrimination claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII); Count II – a race discrimination claim under the Civil Rights Act of 1867, 42 U.S.C. § 1981; Count III – a race discrimination claim under the Civil Rights Act of 1871, 42 U.S.C. § 1983; and Count IV – a due process claim under 42 U.S.C § 1983.  Counts I and II are brought against the Board only; Counts III against all but Defendant Jones;[2] and Count IV against all Defendants.

Since the filing of this action, none of the parties have engaged in this litigation with particular vigor.  After requesting and being granted an extension of time to respond to

---

[2] In ruling on the motion to dismiss, the Court erroneously reported that Count III was brought against all Defendants.

the Complaint, Defendants filed a motion to dismiss.  In ruling
on that motion, the Court observed, at least as to the Title VII
claim, that Defendants did "little more than recite the basic
elements" and paste in part of an argument that was clearly from
another case.  See ECF No. 17.  On February 1, 2012, this Court
issued a memorandum and order denying the motion to dismiss.

The Court then issued a scheduling order setting June 15,
2012, as the discovery deadline.  On June 14, 2012, the parties
filed a joint motion for extension of that deadline on the
ground that obligations in other cases made it difficult to
devote attention to discovery in this case.  See ECF No. 21.  In
response to the motion, the Court extended the discovery period
to August 17, 2012.  The first effort on the part of any party
to actually take discovery in this action occurred on July 6,
2012, when Defendants served Interrogatories and a Request for
Production of Documents on Plaintiff.  After requesting another
extension of time in which to respond to that discovery,
Plaintiff delivered his executed answers to interrogatories and
responsive documents to Defendants.  That appears to be the
totality of discovery that took place in this action.

The briefing of the summary judgment motion reflects much
of the same cavalier approach as did the parties' pursuit of
discovery.  On September 17, 2012, Defendants filed a motion for
summary judgment.  ECF No. 27.  After a recitation of the

elements of a Title VII claim, Defendants suggest that, the "bald allegations contained in Plaintiff's Complaint," are insufficient to state a claim under Title VII.  Id. at 5. Defendants then opine that, because Plaintiff failed to take any discovery in this matter, the record is limited to those bald allegations.  Id.  "Had the Plaintiff participated at all in discovery, the Defendants would have provided numerous documents including Plaintiff's prior evaluations, performance improvement plans, affidavits from management personnel, and electronic mails from management and colleagues regarding Plaintiff's repeated failure to return phone calls and respond to his assigned schools timely."  Id. at 5-6.  Defendants offer no explanation as to why Plaintiff's failure to participate in discovery prevented them from submitting with their motion these materials that are clearly in their possession.  After this cursory discussion of the merits of Plaintiff's discrimination claim, Defendants devote the remainder of their motion to a discussion as to whether the Board is a person subject to suit under § 1983.  Id. at 6-14.

With his opposition to the motion for summary judgment, Plaintiff submitted his own declaration repeating, now under oath, the extensive allegations in his Complaint.  Plaintiff also submitted the Declaration of Catherine Butler.  Butler, who is African American, generally corroborates Plaintiff's version

6

of events.  Butler was employed by the Board as an EBS from 2000
until June 2009 and worked out of the facilities office.  She
states that, when she returned to the facilities office after
the meeting where Scroggins commended Plaintiff, she heard Jerry
Watkins criticize William Watkins because "that White boy"
received a commendation that did not include other staff.
Butler Decl. at ¶ 5.  She states that she heard other comments
from African American staff critical of Plaintiff "because of
his race, [and] offering the assertion that he received
unjustified regard because he was White."  Id.  Butler further
states that, following this incident, Plaintiff received
"hostile and unfair treatment from Defendants William Watkins,
Jerry Watkins, as well as Seawright," id. at ¶ 4, and was denied
"even reasonable accommodations otherwise afforded other staff."
Id. at ¶ 6.

     Ms. Butler also relates an incident that occurred after
Plaintiff's termination that is potentially relevant to
Plaintiff's claims.  She relates that in the spring of 2009, she
learned that Jerry Watkins had demoted William Watkins from the
position of Area Facilities Manager to that of EBS.  When
pressed for why he made that decision, Jerry Watkins said he
took the action because William Watkins "let that stupid White
boy [referring to Plaintiff] kick his ass."  Id. at ¶ 9.

In response to Plaintiff's opposition, Defendants filed a reply brief that addressed in a more substantial manner the merits of Plaintiff's discrimination claim.  With the reply, Defendants submitted several documents that they argue support the conclusion that Plaintiff was fired for legitimate nondiscriminatory business reasons.  Specifically, Defendants assert Plaintiff "repeatedly failed to submit required visitation reports, repeatedly failed to supervise custodial staff, failed to respond timely to telephone inquiries [of] his supervisors and co-workers, and walked out of a meeting with his immediate supervisor when he was told that he was being placed on a performance improvement plan.  ECF No. 42 at 3.  Defendants proffered that it was significant that "Plaintiff received a letter of warning on February 23, 2007[,] advising him that he needed to 'inspect [his] schools more closely and more often."  Id. (citing Defs.' Ex. 1).  Also in their reply, Defendants addressed for the first time the merits of Plaintiff's discrimination claim under § 1981 and his equal protection and due process claims under § 1983 brought against the Individual Defendants.  See ECF No. 42 at 6-10.

Because Defendants raised all new arguments and introduced new evidence in their reply, Plaintiff requested and was granted leave to file a supplemental memorandum in opposition to the

motion for summary judgment. With that supplemental briefing, Plaintiff submitted a Supplemental Declaration. ECF No. 47-1. With that submission, the motion is now ripe.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate under Rule 56 of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In Anderson v. Liberty Lobby, Inc., the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655

(1962)); see also E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005).

## III. DISCUSSION

In moving for summary judgment on Plaintiff's Title VII discrimination claim, Defendants assume that this case falls under the burden shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which is employed in cases where there is no direct evidence of discrimination.  Arguably, however, Plaintiff has offered direct evidence of discrimination in the form of William Watkins' reference to Plaintiff as "that stupid White boy."  As the Fourth Circuit has recognized, the "[u]se of racial aspersions obviously provides an indication that the speaker might be more likely to take race into account in making [an employment] decision." Mullen v. Princess Anne Vol. Fire Co., Inc., 853 F.2d 1130, 1133 (4th Cir. 1988). Assuming, arguendo, that William Watkins' alleged remarks do not rise to the level of direct evidence, Defendants' motion fails, regardless, when analyzed under the McDonnell Douglas scheme for proof by indirect evidence.

Under McDonnell Douglas, a plaintiff first must make out a prima facie case of discrimination.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010).  Once a prima facie case is established, the burden of production then

shifts to the employer to articulate a legitimate, non-
discriminatory justification for its allegedly discriminatory
action.  Burdine, 450 U.S. at 253; Merritt, 601 F.3d at 294.  If
the employer carries this burden, the plaintiff then has an
opportunity to prove by a preponderance of the evidence that the
neutral reasons offered by the employer "were not its true
reasons, but were a pretext for discrimination."  Burdine, 450
U.S. at 253.

        Defendants assume, for the sake of their motion, that
Plaintiff can establish a prima facie case.  ECF No. 42 at 3.
They then argue that Plaintiff's failure to submit the required
visitation reports, failure to supervise his staff, and other
purported performance deficiencies were the legitimate non-
discriminatory reasons for the termination of his employment.
Defendants' argument fails, however, as there is substantial
evidence that these reasons are pretextual.  That evidence is
found both in Plaintiff's declarations, in which he rebuts each
of these allegations and, more significantly, in the declaration
of Ms. Butler, a non-party in this action.

        For example, Defendants rely heavily on their claim that
Plaintiff failed to submit timely visitation reports.  Ms.
Butler states, however, that this reason for disciplining
Plaintiff was "altogether groundless."  Butler Decl. ¶7.  She
states that "[o]n multiple occasions, possibly each week," she

personally took Plaintiff's visitation reports from the office
fax machine and placed them on William Watkins' desk.  Id.  When
she heard William Watkins complaining that Plaintiff had failed
to submit his reports, Butler personally advised him that she
had placed the reports on his desk.  Despite her so advising
William Watkins, "William Watkins and Jerry Watkins proceeded to
make such accusations against Plaintiff Shank, including
accusations leading to his termination."  Id.

     The Court also notes that Defendants factually
mischaracterize at least one important aspect of their argument.
Defendants make much of the date of the first letter of warning
received by Plaintiff advising him that he needed to inspect his
schools more closely.  Defs.' Ex. 1.  That letter was sent on
February 23, 2007, and Defendants assert it "was issued before
Defendant Jerry Watkins became Plaintiff's supervisor and before
the alleged compliment made by Keith Scroggins."  ECF No. 42 at
3.  The date of the letter might have some significance if it
was indeed before the Scroggin compliment.  According to the
Complaint and Plaintiff's Declaration, however, the meeting
where Scroggins singled out Plaintiff occurred in December 2006,
a few months before Defendants began to document deficiencies in
Plaintiff's performance.  Thus, the timing of this first letter
of warning tends to reinforce, not undermine, Plaintiff's claim.

Because the Court finds that a jury could conclude that the reasons for the termination of Plaintiff's employment were pretextual, the Court will deny Defendants' motion as to Count I.

Defendants' argument for summary judgment on Plaintiff's § 1981 discrimination claim is essentially the same as their Title VII argument, i.e., that they "have offered substantial evidence that Plaintiff's job performance was not satisfactory."  ECF No. 42 at 6.  Defendants also note that, in her declaration, Ms. Butler mentions that William Watkins was demoted, and that she and Jerry Watkins were "forced to retire."  Because Ms. Butler, Jerry Watkins and William Watkins are all African American, Defendants suggest that this undermines Plaintiff's contention that similarly situated employees outside the class were treated differently.  There is insufficient evidence in the record regarding the circumstances surrounding these employment actions, however, to conclude that these individuals were similarly situated.  All that is in the record is Ms. Butler's bare mention that these actions were taken.[3]

---

[3] Defendants also argue that it is "most telling" that Plaintiff's brother, Rufus Shank, is employed by Defendant Board as an EBS, was supervised by Jerry Watkins, and is currently employed by the Board.  Id.  Assuming this fact is relevant, Defendants provide no evidentiary support with their summary judgment motion regarding Rufus Shank's employment.  In Plaintiff's Answers to Interrogatories, which were submitted by Plaintiff with his opposition, Plaintiff mentions that his

As to Count III, Defendants argue there is nothing in the record regarding any action on the part of Defendant Jones that would violate Plaintiff's equal protection rights and that he is therefore entitled to judgment as to that claim.  As mentioned above, however, Count III was not asserted against Defendant Jones and, thus, this argument is moot.

As to the due process claims asserted in Count IV, Defendants contend that Plaintiff was provided a pre-termination opportunity to respond, coupled with post-termination administrative procedures consistent with Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532 (1985).  Defendants also argue that, because Plaintiff withdrew his internal procedural appeal of the employment decision, he deprived himself of the process that was afforded under Maryland law and thus all Defendants are entitled to judgment as to that claim.  In his surreply, Plaintiff makes no response to these arguments.  In the absence of any response, the Court will grant the motion as to Count IV.

Finally, Defendants repeat the argument that, as an "arm of the state," the Board is not a person subject to suit under § 1983.  The claim of discrimination against the Board under §

---

brother is employed by the Board and that his brother had knowledge of the treatment of White employees generally, and Plaintiff specifically.  Pl.'s Ex. 3 at 2.  The fact that there is another White individual employed by the Board who has not been fired is not particularly "telling."

14

1983 is similar to the claim of discrimination against the Board under Title VII - a claim which will go forward - and the two claims are subject to the same evidence and proof.  Thus, there is little practical advantage in resolving the issue of the Board's status at this time.  The Court will address that issue at a later time, if and when it becomes necessary.

**IV. CONCLUSION**

For these reasons, Defendants' motion will be granted as to Count IV but, otherwise, it will be denied.  A separate Order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: March 19, 2013.